GESINA SEILER CARSON
Assistant Attorney General of Wisconsin
State Bar No. 1055162
Post Office Box 7857
Madison, Wisconsin 53707-7857
Telephone: (608) 266-1672
Fax: (608) 267-8906
E-mail: carsongs@doj.state.wi.us
MIGUEL A. NERI
Deputy Attorney General of California
State Bar No. 132875
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 879-0755
Fax: (510) 622-2270
E-mail: Miguel.Neri@doj.ca.gov
Attorneys for Third Party Jonathan Kenoyer

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA PARENTS FOR THE EQUALIZATION OF EDUCATIONAL MATERIALS, et al., | |
| Plaintiffs, | Case No. 17-CV-0635-CRB |
| v. | **BRIEF IN SUPPORT OF MOTION TO MAINTAIN CONFIDENTIAL DESIGNATION** |
| TOM TORLAKSON, et al., Defendants. | |
| | Judge: Charles R. Breyer Action Filed:  June 14, 2018 |

## BRIEF IN SUPPORT OF JONATHAN KENOYER'S MOTION TO RETAIN CONFIDENTIAL DESIGNATION OF RECORDS PURSUANT TO STIPULATED PROTECTIVE ORDER (DKT. 130)

1

## INTRODUCTION

Plaintiffs served Third Party Jonathan Mark Kenoyer with a subpoena for documents. Kenoyer is a Professor of Anthropology at the University of Wisconsin ("UW") who focuses on the Indus Civilization (Pakistan and India). The documents requested were for all communications among the South Asia Faculty Group (SAFG) relating to "Framework" and the California State Education Agency and Professor Kenoyer's 2005 research paper entitled "Cultures and Traditions of the Indus Traditions." UW ultimately produced 800+ documents in response and designated a portion of those documents "Confidential" pursuant to the Protective Order entered in this case (Dkt. 130.) Plaintiffs have challenged to the confidential designation of 67 of these documents, which have been filed "Under Seal."

The Confidential documents are communications among faculty. They are confidential and protected by academic freedom. The consequence of lifting the confidential designation of the records will result in the inability of faculty and their collaborators to communicate freely and make advancements in their respective fields. Kenoyer respectfully requests this Court grant his Motion and retain the "Confidential" designation of these records.

## STATEMENT OF FACTS

On September 19, 2017, Plaintiffs served Professor Kenoyer with a subpoena for documents. (Dalle Molle Decl. Ex. 1.) The documents requested were for all communications among the South Asia Faculty Group (SAFG) relating to "Framework" and the California State Education Agency and Professor Kenoyer's 2005 research paper entitled "Cultures and Traditions of the Indus Traditions. (*Id.*)

Brief in Support of Motion to Maintain Confidential Designation (17-cv-0635-CRB)

Kenoyer is the George F. Dales and Barbara A. Dales Professor of Anthropology at UW with a primary focus on the Indus Civilizations--India and Pakistan.  Professor Kenoyer has been excavating and carrying out research on the Indus Civilization since 1975 and has excavated at the site of Harappa, Pakistan since 1986. He has also worked at sites and ethnoarchaeological projects in India, China and Oman. He has a special interest in ancient technologies and crafts, socio-economic and political organization as well as religion. These interests have led him to study a broad range of cultural periods in South Asia as well as other regions of the world. His publications include monographs on the Indus civilization as well as numerous articles, a grade school book on ancient South Asia and even a coloring book on the Indus cities for children. (*Id.* at ¶ 2.)

UW's general counsel reviewed the subpoena and gathered responsive records. She determined that some of those records were confidential academic communications between scholars on their area of scholarship. (*Id.* at ¶ 4.)  After communications with Glenn Katon, counsel for Plaintiffs, UW and Plaintiffs entered into a Stipulated Protective Order on January 23, 2018. The purpose was to protect the confidential communications between Kenoyer and other scholars discussing their areas of scholarship and ensure they were not made public. (*Id.* at ¶ 5.)  Kenoyer produced 513 pages of documents on October 19, 2017, 153 pages of documents on October 12, 2017 and 141 pages of documents on February 05, 2018. The final 141 documents were designated as "Confidential," pursuant to the Stipulated Protective Order. (*Id.* at ¶ 6.)

UW-Madison's decision in this case is consistent with the State of Wisconsin public records law. (*Id.* at 11, Exs. 3-4.) Some arguments made in each of these responses are relevant to the records designated by Kenoyer as confidential academic records of scholars in this case. (*Id.* at ¶ 11.) In designating the Kenoyer emails as "Confidential," UW-Madison employed a public

3

records-type balancing test, attempting to balance need in this litigation with the confidential nature of these records, and their potential for harm if released. Even though the relevance of these records to the issues remaining in the current litigation seemed limited at best, UW-Madison opted to produce the records only for this litigation, with the "Confidential" designation. (*Id.* at ¶ 12.)

By email dated May 24, 2018, Plaintiff, pursuant to ¶ 6.2 of the Protective Order, challenged the confidential designation to the following pages of the document production: 1-2, 5, 16, 22-24, 29-30, 36, 46-48, 51, 53, 56-58, 60-62, 66-67, 72-95, 105-123, 128. (*Id.* at 7.) On May 30, 2018, counsel for Kenoyer had a conference call with counsel for Plaintiff, as required by ¶ 6.2 of the Protective Order. (Dalle Molle Decl. at ¶ 9; Carson Decl. ¶ 3.) The parties conferred in good faith, but could not reach an agreement regarding the "Confidential" designation on the above-identified documents. (Dalle Molle Decl. at ¶ 10; Carson Decl. ¶ 4.)

Kenoyer timely filed (within 21 days of the May 24, 2018 e-mail notice challenging confidentiality of records) this Motion to retain confidentiality. (Dkt. 130 at ¶ 6.3.)

## ARGUMENT

Intellectual communications among UW scholars is imperative for the development of their respective fields. Faculty members often use e-mail to develop and share their thoughts with one another. The confidentiality of such discussions is vital to scholarship and to the mission of UW. Faculty members must be afforded privacy in these exchanges in order to pursue knowledge and develop lines of argument without fear of reprisal for controversial findings and without the premature disclosure of those ideas. Additionally, the contentious nature of this litigation, and positions taken by Plaintiffs regarding Professor Kenoyer's prior publications weighed into UW's

4

analysis. (Compl. ¶ 52-53.) For these reasons, UW has concluded in this case that Professor Kenoyer's e-mails must be kept confidential and not used or disclosed outside of this litigation.

### A.  Overview of the Law.

Courts have recognized a strong Constitutional interest in the right of scholars to conduct research without interference, an aspect of academic freedom recognized as a "special concern of the First Amendment." *The Regents of the University of California v. Bakke*, 438 U.S. 265, 312 (1978). They have applied these principles in articulating a Constitutionally-based privilege that protects scholars from divulging information that may lead to interference with their research activities. *See Dow Chemical v. Allen*, 672 F.2d 1262 (7th Cir. 1982); *Richards of Rockford, Inc. v. Pacific Gas & Elec. Co.*, 71 F.R.D. 388 (N.D. Cal. 1976).

In *Dow Chemical*, Dow had subpoenaed all the notes, reports, working papers and raw data relating to ongoing, but incomplete, animal-toxicity studies at the University of Wisconsin. The court protected the university's research information from production, finding that compelled disclosure would "threaten substantial intrusion into the enterprise of university research." *Dow Chemical*, 672 F.2d at 1276. The court found that such an intrusion could result in a chilling effect on academic research, noting the possibility for misappropriation of research results by a biased third party, the fear of additional disclosure in the future, and of potentially severe harm to the integrity of the research and to the investigators' careers. The court concluded that such an intrusion into university research was not outweighed by the alleged need for the information.

Violations of the principles of academic freedom are not the only concerns courts have expressed about the chilling effect of requiring a researcher to turn over confidential source materials. In *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 710 (1st Cir. 1998), the court held that

5

Microsoft was not entitled to production of academic research materials, to defend against an antitrust suit. Reasoning that academics are like journalists, the court observed that if academic research materials were freely subject to subpoena, researchers' sources likely would refuse to confide in them. *See id.* at 714. The court further noted, "[j]ust as a journalist, stripped of sources, would write fewer, less incisive articles, an academician, stripped of sources, would be able to provide fewer, less cogent analyses." *Id.*

While it is true no absolute privilege protects academic emails from disclosure, the expectation of confidentiality is extremely important to Kenoyer and all of the faculty who participated in the textbook review. *Zaustinsky v. University of California*, 96 F.R.D. 622 (D.C. Cal. 1983) is instructive to this Court's analysis. In *Zautinsky*, the plaintiff, a tenured faculty member, sought peer evaluations from her personnel file. These evaluations were prepared with the expectation of confidentiality. *Id.* at 623. The court held the documents were entitled to treatment as privileged/confidential communications and a balancing test was required to determine whether materials were protected from disclosure.

The court looked to Rule 501 of the Federal Rules of Evidence, which leaves questions of privilege to case-by-case adjudication "in the light of reason and experience." *Id.* at 624 (quoting *Trammel v. United States*, 445 U.S. 40, 47–48, (1980)). The court stated criteria of eligibility for this protection as follows:

(1)    The communications must originate in a confidence that they would not be disclosed.
(2)    This element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties.
(3)    The relation must be one which in the opinion of the community ought to be sedulously fostered.

*Id.* at 625 (citing 8 Wigmore, Evidence § 2285 at 527 (McNaughton rev. 1961)). The court found the criteria satisfied. The court then turned to the final factor.

> To say that the material may qualify for treatment as privileged does not dispose of the matter, however. The decision whether to protect material against disclosure because of its confidential character turns on a fourth criterion, stated by Wigmore as follows:
>
> > The injury that would inure to the relation by the disclosure of the communication must be greater than the benefit thereby gained for the correct disposal of the litigation.

*Id.*

The court further commented that this final issue cannot be resolved in the abstract but only in the particular litigation context in which it arises and "relevance must be closely scrutinized to ensure that the substantial interest in confidentiality is weighed carefully in striking the proper balance." *Id.*

### B.   The Kenoyer emails at issue are entitled to retain their "Confidential" designation.

Pursuant to Rule 501, the documents contained in Exhibit 2 are entitled to protection under the test articulated above.  *See id.*

First, the communications were conducted in a format where they expected that they would not be disclosed. *See id.* at 625. Email is the preferred method for scholars spread out over the world to communicate. The emails are sent only to the SAFG and they are relating to text book review undertaken for the State of California. Second, the e-mail discourse freely exercised by SAFG cannot occur without protection. *See id.* If their communications are placed on the Internet for the world to see forever, this group (and other similar groups) will cease to exist as they can

Brief in Support of Motion to Maintain Confidential Designation (17-cv-0635-CRB)

no longer communicate without fear of reprisal or without sanitizing their comments. The consequence of lifting the confidential designation of the records will result in the inability of faculty and their collaborators to communicate freely and make advancements in their respective fields.  Third, the community at large benefits tremendously from collaboration among faculty throughout the world. *See id.* Some of our greatest discoveries and achievements have resulted from collaboration. And they should feel free to collaborate utilizing the latest technology, which is currently e-mail. If these e-mails do not retain their "Confidential" designation, they will undoubtedly be widely distributed. Not only will such distribution have a devastating impact on SAFG's ability to collaborate, it will have a chilling effect on all academic collaboration going forward.

The final consideration, that damage done by the disclosure of the communication must be greater than the benefit gained for the correct disposal of the litigation clearly weighs in favor of retaining the "Confidential" designation.  *See id.* UW-Madison employed a public records-type balancing test, attempting to balance need in this litigation with the confidential nature of these records, and their potential for harm if released. The relevance of these records to the issues in this litigation seemed marginal. [1]However, UW-Madison, after conducting its own balancing test, opted to produce the records only for this litigation, with the "Confidential" designation. There is no possible prejudice to Plaintiffs because they can use the emails for this litigation, if they are needed. Kenoyer is not aware of any possible benefit to the Plaintiffs in this litigation through the

---

[1] The only issue remaining in the case pertains to the establishment clause and whether on objective person would believe the curriculum favors or disfavors any religion. Therefore, private communications have no relevance to that issue because an objective person would not have access to those emails.

Brief in Support of Motion to Maintain Confidential Designation (17-cv-0635-CRB)

removal of the "Confidential" designation. The sole reason appears that Plaintiffs simply do not agree with the designation and want this Court's permission to widely disseminate them. The potential for harm to SAFG and the chilling of scholarly collaboration significantly outweighs any possible benefit to this litigation from removal of the "Confidential" designation.

## CONCLUSION

For the foregoing reasons, Third Party Jonathan Mark Kenoyer respectfully requests the Court grant his Motion and retain the "Confidential" Designation of the records contained in Exhibit 2.

Dated: June 14, 2018.

Respectfully submitted,

*/s/Gesina S. Carson*

GESINA SEILER CARSON
Assistant Attorney General
State Bar #1055162

Attorney for Third Party Jonathan Kenoyer