AMY BISSON HOLLOWAY, State Bar. No. 163731
General Counsel
EDMUNDO R. AGUILAR, State Bar No. 136142
Assistant General Counsel
TODD M. SMITH, State Bar No. 170798
Assistant General Counsel
THOMAS H. PROUTY, State Bar No. 238950
Deputy General Counsel
California Department of Education
1430 N Street, Suite 5319
Sacramento, California 95814
Telephone: 916-319-0860
Facsimile:  916-319-0155
tprouty@cde.ca.gov
Attorneys for the State Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CALIFORNIA PARENTS FOR THE EQUALIZATION OF EDUCATIONAL MATERIALS, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> TOM TORLAKSON, in his official capacity as State Superintendent of Public Instruction and Director of Education for the California Department of Education, *et al*., <br><br> Defendants. | Case No. 17-cv-00635-CRB <br><br> THE STATE DEFENDANTS' REPLY RE: THIRD PARTY'S MOTION TO RETAIN CONFIDENTIAL DESIGNATION OF RECORDS <br><br> Hearing Date:   August 16, 2018 <br> Time:               11:00 a.m. <br> Courtroom:      F  (15th Floor) <br> Magistrate Judge Jacqueline Scott Corley |

## I. INTRODUCTION

The State Defendants[1] do not oppose Jonathan Kenoyer's Motion to Retain Confidential Designation of Records (Dkt. 141) (the "Motion"). And if Plaintiffs' Opposition had not argued that the subject records were relevant to the lone remaining issue in this case, then the State Defendants would have been content to sit this dispute out. However, Plaintiffs *do* argue relevance in their Opposition. (Opp. at 7:13-25.) This is problematic, because the Plaintiffs have been actively avoiding bringing a discovery dispute with the State Defendants involving relevance and the scope of discovery (among other things) before the Court for several weeks – opting instead to issue more than a dozen subpoenas attempting to extract irrelevant documents from third parties who may be less attuned to the legal issue and the scope of discovery in this case. The State Defendants are concerned that Plaintiffs seek a ruling from the Court touching on relevance and the scope of discovery, without adequate briefing, and without hearing from the State Defendants. Plaintiffs' theory about relevance and the scope of discovery in this case is wrong – and the only case that Plaintiffs have ever cited to support their theory (*McCreary*) actually *strongly contradicts* it.

## II. THE SOLE LEGAL ISSUE IN THE CASE

Plaintiffs filed this lawsuit on February 8, 2017. The Complaint alleged claims under the Due Process Clause, Free Exercise Clause, Equal Protection Clause and Establishment Clause of the United States Constitution. The State Defendants moved to dismiss, and on July 13, 2017, the Court entered its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss ("Dismissal Order"). (Dkt. 119.) The Dismissal Order dismissed Plaintiffs' Due Process, Equal Protection and Free Exercise claims with prejudice. (Dkt. 119 at 4:25 – 5:4.) Analyzing the remaining Establishment Clause claim under the three-prong "*Lemon* test," the Court rejected Plaintiffs' claims based on alleged violations of

---

[1] The State Defendants are the following defendants, sued only in their official capacity: Tom Torlakson, in his official capacity as State Superintendent of Public Instruction and Director of Education for the California Department of Education ("CDE"); Tom Adams, in his official capacity as Deputy Superintendent of the Instruction and Learning Support Branch of the CDE; Stephanie Gregson, in her official capacity as Director of the Curriculum Frameworks and Instructional Resources Division of the CDE; and Michael Kirst, Ilene Straus, Sue Burr, Bruce Holaday, Feliza I. Ortiz-Licon, Patricia Ann Rucker, Nicolasa Sandoval, Ting L. Sun, and Trish Boyd Williams, each in their official capacity as a member of California's State Board of Education.

the first and third prongs test (*i.e.*, secular purpose and excessive entanglement).  (Dkt. 119 at 9:10 – 13:19.)  That left only the second prong – whether the primary effect of the SBE's adoption of the Standards and Framework was the message that the SBE disapproves of Hinduism.  (Dkt. 119 at 13:20 – 16:8.)

### III.  RELEVANCE AND THE SCOPE OF DISCOVERY

The scope of discovery only includes non-privileged matter that is "relevant to any party's claim or defense" and "proportional to the needs of the case."  Fed. R. Civ. P. 26(b).

The "primary effect" prong presents one narrow, objective inquiry:  whether the hypothetical reasonable observer in the community would conclude that the primary effect of the State Board of Education's ("SBE") adoption of history content standards in 1998 and/or a history curriculum framework in 2016 is the message that the state disapproves of Hinduism.  (Dkt. 119 at 4:25 – 5:4, and 9:10 – 16:8.)  Undisclosed intent, non-public documents, and particular individuals' lay or expert opinions are irrelevant.  *See, e.g., Alvarado v. City of San Jose*, 94 F.3d 1223, 1232 (9th Cir. 1996) (recognizing that the reasonable observer is not an expert on esoteric matters and cannot "be turned into one by any publicity generated by plaintiff's lawsuit."); *Lynch v. Donnelly*, 465 U.S. 668, 691-92 (1984) (O'Connor, concurring) ("What is crucial is that a government practice not have the effect of communicating a message of government endorsement or disapproval of religion.  It is only practices having that effect, whether intentionally or unintentionally, that make religion relevant, in reality or public perception, to status in the political community."); *California Parents for Equalization of Educational Materials v. Noonan*, 600 F. Supp. 2d 1118 (E.D. Cal. 2009) (expert testimony not relevant or useful); *McCreary County v. ACLU*, 545 U.S. 844, 863 (2005) ("If someone in the government hides religious motive so well that the 'objective observer, acquainted with the text, legislative history, and implementation of the statute,' cannot see it, then without something more the government does not make a divisive announcement that in itself amounts to taking religious sides.")

Although the State Defendants have produced over eighteen-thousand (18,000+) pages of documents, plus recordings of relevant public meetings – (essentially everything that even the most attentive observer in the community could have observed) – Plaintiffs have been seeking private, non-

///

Case No. 17-cv-00635-CRB                           2            State Defendants' Reply Re: Third Party's
                                                                         Motion to Retain Confidentiality Designation

1  public communications that never became part of the mix of public information available to the
2  reasonable observer.
3  Plaintiffs have never articulated the relevance of the private communications that they seek,
4  other than through a general reference to the relevance of "history and context" discussed in *McCreary*
5  *County v. ACLU*, 545 U.S. 844 (2005).  (*See* Opp. at 7:19-22; *see also* Dkt. 134 at 4: Plaintiffs' portion
6  of the parties' Joint Case Management Statement, citing *McCreary*.)  However, the "history and
7  context" considered in *McCreary* was the reasonably known and shared history of the community, not
8  the previously undisclosed content of private communications uncovered by the plaintiffs only through
9  post-lawsuit fishing expeditions.  In fact, *McCreary* (which was primarily about the "secular purpose"
10 prong) forcefully supports the State Defendants' position.  *McCreary's* main point was that the secular
11 purpose prong should not be abandoned as a hopeless attempt to discover state officials' inner psyches,
12 because it is properly determined only through examining "openly available data" such as the "text,
13 legislative history, and implementation" of the law.  545 U.S. at 863.  The phrase "history and context"
14 was used later in the case only in rejecting the government's secondary argument that the secular
15 purpose inquiry should have been based only on its *latest public* enactment and display, which tried to
16 cure problems with its earlier original and revised *public* enactments and displays.  *Id*. at 866.

**IV. HOWEVER THE COURT DISPOSES OF THE INSTANT MOTION, IT SHOULD BE MINDFUL OF HOW PLAINTIFFS MAY ATTEMPT TO USE ANY RULING IN CONNECTION WITH OTHER DISPUTES THEY HAVE DELAYED BRINGING TO THE COURT**

20 It is better for the merits – and not tactics – to determine how disputes are resolved.  The State
21 Defendants are concerned that Plaintiffs seek to use a ruling on this motion to manipulate disputes with
22 others that they have delayed bringing to the Court.  (This concern was only heightened by Plaintiffs'
23 refusal to serve a copy of their sealed Opposition on the State Defendants' counsel on the ground that
24 the standard protective order entered in this case prohibited that, despite the fact that the State
25 Defendants' counsel had signed the protective order and received the underlying confidential
26 documents from the producing party.)
27 Since January 2018, there has been a discovery dispute between Plaintiffs and the State
28 Defendants involving relevance, the scope of discovery, undue burden, the legislative privilege and the

deliberative process privilege.  After months of substantial meet and confer efforts, it was the State Defendants that finally filed a Notice of Discovery Dispute on April 25, 2018.  (Dkt. 131.)  That prompted the Court to issue an Order of Reference to Magistrate Judge on April 30, 2018.  (Dkt. 132.)  The parties summarized their dispute in a Joint Case Management Conference (Dkt. 134), and at the May 11th conference, Judge Breyer set this case for trial for December 10, 2018 – two-and-a-half months *before* either party had proposed.  (*See* Dkt. 135 – text only entry).  Initially, Plaintiffs seemed willing to submit the parties' dispute through the prescribed 5-page joint letter process – advising on May 24 that Plaintiffs would be providing their portion on the joint letter "next week" and that they believed a favorable ruling would likely cause them to "seek additional time for discovery that will impact the trial date."  But Plaintiffs' portion of the joint letter never came.  On May 30th, the State Defendants advised that they were prepared to submit a joint letter, and they even sent over a template for the joint letter that day to expedite the process.  However, Plaintiffs' counsel replied that day: "I haven't been able to focus on this, although I know I need to very soon."  Five weeks later, Plaintiffs still have not moved on that dispute.  Instead, they have issued a slew of subpoenas seeking documents from third parties, including several university professors.  Thus, it appears that Plaintiffs have decided that it is more strategic to press their unsupported discovery positions against third parties (who may not understand the legal issue and scope of discovery in this case) than the State Defendants (who can present cogent and thoroughly researched arguments contrary to Plaintiffs' positions).  The State Defendants' main concern is that Plaintiffs' delay tactics do not enable it to twist any ruling on the instant motion as a precedential or generally applicable ruling on relevance and the scope of discovery based on one-sided briefing for a *de facto* victory on other disputes.

Dated:  July 3, 2018

Respectfully submitted,

AMY BISSON HOLLOWAY
General Counsel
EDMUNDO R. AGUILAR
Assistant General Counsel
TODD M. SMITH
Assistant General Counsel

By: /s/ Thomas Prouty
THOMAS PROUTY
Deputy General Counsel
Attorneys for the State Defendants