CHARLES F. ROBINSON #113197
charles.robinson@ucop.edu
MARGARET L. WU #184167
margaret.wu@ucop.edu
JOHN GHERINI #220981
john.gherini@ucop.edu
University of California
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA  94607-5200
Telephone:    510-987-9800
Facsimile:     510-987-9757

Attorneys for Third-Party
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

FEE EXEMPT – GOV'T CODE § 6103

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA PARENTS FOR THE EQUALIZATION OF EDUCATIONAL MATERIALS, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>TOM TORLAKSON, in his official capacity as State Superintendent of Public Instruction and Director of Education for the California Department of Education, *et al.,*<br><br>Defendants. | CASE NO.  17-CV-00635-CRB<br><br>THIRD PARTY THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S NOTICE OF MOTIONS AND MOTION TO INTERVENE AND MOTION TO MAINTAIN CONFIDENTIAL DESIGNATION AND TO AMEND PROTECTIVE ORDER<br><br>Date:            August 16, 2018<br>Time:           11:00 a.m.<br>Courtroom:   F<br>Judge:          Honorable Jacqueline Corley |

TO ALL PARTIES, THIRD PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 16, 2018 at 11:00 a.m. in Department F third party, The Regents of the University of California ("The Regents"), will and hereby does move this Court for an order allowing The Regents to intervene in this case for the purpose of arguing in favor of protecting the confidential designation of certain researcher emails and for an order modifying the protective order in the case to add more protection for private researcher emails.

- 1 -

1    The Regents first seek an Order under Federal Rule of Civil Procedure 24 allowing it to
2    intervene in this matter for the sole purpose of arguing in favor of continuing the confidential
3    designation of various researcher emails at issue, including, but not limited to, the private
4    communications of University of California San Diego professor Kamala Visweswaran, which
5    were produced by Jonathan Mark Kenoyer ("Kenoyer") at the University of Wisconsin.  The
6    Regents bring this motion under both Rule 24(a) (intervention as a matter of right) as well as rule
7    24(b) (permissive intervention).

8    The Regents next seek to join in the motion filed by Kenoyer and seek an order that the
9    private researcher communications at issue maintain their confidential designation on the ground
10   these communications should be protected under the First Amendment and case law supporting
11   the protection of academic freedom.

12   Finally, The Regents seek an order modifying the current protective order that applies to
13   the private researcher communications at issue to increase the protection of these communications
14   and build in safeguards that prevent any improper use of the communications.

15   These motions are based on this Notice of Motion and Motion, the Memorandum of
16   Points and Authorities listed below, the Declarations of Kamala Visweswaran and John Gherini,
17   filed herewith, and any other such documents or evidence in the case as determined by the Court.

Dated:  July 5, 2018

OFFICE OF THE GENERAL COUNSEL
UNIVERSITY OF CALIFORNIA

By: _____
     John Gherini

Attorneys for Third-Party
THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

    I.    Introduction ................................................................................................................. 1

    II.   Statement of Issues To Be Decided .............................................................................. 2

    III.  Factual Background .................................................................................................... 2

    IV.  Argument ..................................................................................................................... 6

        A.   The Regents of the University of California Should Be Permitted to Intervene in This Matter on Behalf of its Faculty To Protect Private Researcher Communications ............ 6

            1.   The Regents qualify for intervention as a right under FRCP 24(a) ............................... 6

            2.   Even if the Court determines The Regents do not have a right to intervene, they should be permitted to intervene under FRCP 24(b) ............................................................... 7

        B.   The Private Communications of Researchers Should Continue to be Protected Under a Protective Order, and the Current Protective Order Should be Modified to Provide Additional Protections for the Designated Communications ............................................. 8

            1.   The Continued Confidential Designation of Private Researcher Communications Is Critical to Protect Academic Freedom ............................................................................ 9

            2.   Any Balancing Weighs in Favor of Protection ............................................................. 11

        C.   The Regents Request Slight Modifications to the Protective Order to Add Necessary Protections For the Private Researcher Communications at Issue ................................... 14

    V.   Conclusion ................................................................................................................. 15

**TABLE OF AUTHORITIES**

**CASES**

Alvarado v. City of San Jose, 94 F.3d 1223, 1232 (9th Cir. 1996) .................................................. 14

Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992) ....................................... 9

Brown v. Li, 308 F.3d 939, 951 (9th Cir. 2002) ........................................................................... 11

Council v. Glickman, 82 F.3d 825, 836 (9th Cir. 1996) ................................................................ 8

Cusumano v. Microsoft Corp., 162 F.3d 708, 710 (1st Cir. 1998) ............................................... 12

Dow Chemical v. Allen, 672 F.2d 1262 (7th Cir. 1982) .......................................................... 11, 12

In re NCAA Student-Athlete Name & Likeness Licensing Lit., 2012 U.S. Dist. LEXIS 110824 (N.D. Cal. 2012) ...................................................................................................................... 13

Keyishian v. Board of Regents, 385 U.S. 589, 602 (1967.) .......................................................... 10

McCreary v. ACLU of Kentucky, 545 U.S. 844, 862 (2005) ........................................................ 15

Richards v. Pacific Gas and Electric Company, 71 F.R.D. 388, 390 (N.D. Cal. 1976) ..... 13, 14, 15

Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984) .......... 10

Sierra Club v. United States EPA, 995 F.2d 1478, 1482 (9th Cir. 1993) ....................................... 8

Southwest Ctr. For Biological Diversity v. Berg, 268 F.3d 810, 818 (9th Cir. 2001) ...................... 7

The Regents of the University of California v. Bakke, 438 U.S. 265, 312 (1978) ......................... 8

United States v. C.B.S., 666 F.2d 364, 371-72 (9th Cir. 1982) ..................................................... 13

United States v. Zolin, 809 F.2d 1411, 1413 (9th Cir. 1987) .......................................................... 8

**OTHER AUTHORITIES**

University of California, *Academic Personnel Manual*, APM 010 (Rev. 2003) .......................... 10

**RULES**

Federal Rule of Civil Procedure 24(a) ............................................................................................ 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     Introduction

Plaintiff has chosen to litigate the issue of the discoverability of private researcher communications through a "divide and conquer" strategy.  Without notice to The Regents of the University of California ("The Regents"), plaintiff served subpoenas to several researchers, which ostensibly requested University of California, San Diego ("UCSD") professor Kamala Visweswaran's private communications.  To this point the strategy has been successful as plaintiff convinced Professor Kenoyer, at the University of Wisconsin, to produce under a protective order several of Professor Visweswaran's private communications.  While those communications were designated as confidential, plaintiff has now sought to have the confidential designation removed and Professor Kenoyer has been forced to file a motion to maintain the confidentiality.  Plaintiff's Opposition to that motion wrongly asserts the subject email communications were political advocacy rather than scholarly and were not intended to be private because they "showed no indication of confidentiality."  This could not be further from the truth.

As a result, The Regents seek to intervene in this matter for the sole purpose of protecting the private communications of researchers.  The Regents also request the protective order be slightly modified to ensure that private communications of researchers are not used for an improper purpose, are restricted to "attorney's eyes only" and that The Regents have the ability to enforce the protective order in the future to the extent there are any violations.

On April 18, 2018 plaintiff delivered a subpoena to the UCSD Department of Ethnic Studies addressed to professor Kamala Visweswaran.  The subpoena requests production of her private communications with other researchers pertaining to the development of reports that were later submitted to the California Department of Education ("CDE").  (*See* Declaration of Kamala Visweswaran ("Visweswaran Decl.), ¶ 5.)  On behalf of Professor Visweswaran, The Regents timely objected to the subpoena on the grounds the scope of the subpoena was unduly burdensome because it sought materials not relevant to the issues remaining in the case and on the grounds the subpoena sought the private communications of researchers that should be protected.

Professor Visweswaran is particularly concerned about the chilling effect on her scholarship, and that of other researchers, if their private communications are made public.

The threat to Professor Visweswaran's academic freedom through the production of her private communications is significant. Professor Visweswaran focuses her research on the Hindu nationalist movement in India, and its relationship to Hindu nationalist groups in the United States. She, and many other scholars in the area of South Asian studies, have been subjected to campaigns of harassment and intimidation by Hindu nationalist groups in response to their research, scholarship and publications. She has already experienced the chilling effect these campaigns can have on her academic freedom because certain researchers have declined to collaborate with her out of fear they will become targets. Her private communications with researchers must be protected from disclosure to prevent any further erosion of her academic freedom.

## II.     Statement of Issues To Be Decided

1. Do The Regents have a right to intervene in this case under either Federal Rule of Civil Procedure 24(a) or 24(b) to protect the confidentiality of Professor Visweswaran's private researcher communications;

2. Should the private communications of researchers, including but not limited to Professor Visweswaran, continue to be entitled to confidential designations in order to protect the researchers academic freedoms; and

3. Should the current protective order in this case be modified slightly to add additional protections against the misuse of private researcher communications?

## III.    Factual Background

Professor Visweswaran is an anthropology professor at UCSD. She was previously a Professor of Anthropology and South Asian Studies at the University of Texas. (Visweswaran Decl., ¶ 1.) Her research focuses on the Hindu nationalist movement (also known as the "Hindutva movement") in India, Hindutva groups' targeted killings of Indian minorities, and the relationship between Hindu nationalist groups in India and those in the United States. (Viswanathan Decl., ¶ 3.)

On April 18, 2018 Professor Visweswaran received a subpoena from plaintiffs in this case. The subpoena sought all her communications with researchers pertaining to the preparation of two reports that were shared with the California Department of Education. (Viswanathan Decl., ¶ 4.) The subpoena also specifically requests her private communications with researcher Michael Witzel, with whom she co-authored an article about the Hindutva movement's efforts to influence textbook content in India and the United States. In a separate lawsuit in 2007, the California Parents for the Equalization of Educational Materials ("CAPEEM"), which is the plaintiffs in this case, sought Professor Witzel's private communications via subpoena and had its motion to compel those communications denied by the Massachusetts District Court. In 2008, the denial was upheld on appeal by the First Circuit. (See Declaration of John Gherini ("Gherini Decl."), ¶ 3, Opinion of the First Circuit attached thereto as Exhibit A.)

On May 1, 2018 The Regents timely served an objection to the subpoena to Professor Visweswaran. The objection made clear that The Regents sought to protect the private communications of its researchers. (Gherini Decl., ¶ 4, Objection attached thereto as Exhibit B.) Upon learning that Professor Kenoyer and the University of Wisconsin had produced private researcher communications, albeit under a protective order, counsel for The Regents attempted to meet and confer with counsel for plaintiff on proper steps to give all third parties a chance to be heard on the issue. Plaintiff's counsel denied that request. (Gherini Decl., ¶ 5.) Then with full knowledge of The Regents' interest in protecting these communications, plaintiff challenged the confidential designation of the communications, which prompted The Regents to attempt to intervene in this proceeding.

Because of her area of research and her scholarly activities, Professor Visweswaran is acutely aware of the threat to her academic freedom that Hindu nationalist groups can pose. United States based Hindu nationalists have launched a series of campaigns to intimidate and harass Sanskritists and scholars of Hinduism in the United States. Those or similar groups have charged textbook publishers with bias against Hinduism. (Visweswaran Decl., ¶6.) The campaigns have included the use of aggressive tactics with the apparent attempt to harass and intimidate American South Asian scholars, which have included threats, throwing eggs at

researchers, sending communications to Universities asking for removal of the faculty members and the filing of lawsuits against publishers of the researcher's books. (Visweswaran, ¶ 7.)

Professor Visweswaran initially became involved with the California process for review of the public school curriculum in 2005. She assisted with compiling testimony that was submitted to the CDE with the goal of providing a scholarly assessment of textbook content based on the then current consensus and understanding of the issues from the perspective of South Asian studies. (Visweswaran Decl.,¶ 8.) As a result of her role in that 2005-2006 process, Professor Visweswaran was subjected to harassing communications from Hindu nationalists. (Visweswaran Decl., ¶ 9.)

In 2015 members of the community alerted faculty to certain group's attempts to alter the factual basis for the California framework curriculum. In response, in 2016, Professor Visweswaran again became involved with an ad hoc committee of researchers and scholars to provide testimony to the California Board of Education. Contrary to CAPEEM's Opposition, the ad hoc committee was not created at request of the CDE or it member Tom Adams. The ad hoc committee was comprised of faculty from the South Asia studies programs at major California universities as well as researchers from universities outside California. The goal was to create a well-balanced committee of scholars from a wide range of disciplines who conduct research for public and private universities. (Viswanathan Decl., ¶ 12.) Based on her involvement with the committee, Professor Visweswaran became aware that some researchers withdrew from the committee because they were concerned about harassment and retaliation from Hindu nationalist groups to the extent their involvement became public. Other researchers declined to participate at all because they had previously faced harassment. The threat to these researchers is real. Once the committee's recommendations became public, there was a virulent campaign against one of the contributors. (Visweswaran Decl., ¶ 13.) In addition, the researchers that provided live testimony in Sacramento were spat on, and subjected to verbal harassment. (Visweswaran Decl., ¶ 19.) The concern is that many others would face harassment and intimidation if their communications on the subject, that they sent with the expectation the communications would be private, were produced without restriction.

The ad hoc committee reviewed hundreds of pages of the framework curriculum. Hundreds of emails were exchanged between committee members evaluating the curriculum and debating each other's opinions and contributions as well as generating several drafts of the reports that were ultimately provided to CDE. (Visweswaran Decl., ¶ 15-16.)

Professor Visweswaran is seriously concerned about the production of her private communications and the effect that would have on her areas of research becoming. The communications she had with other researchers were conducted with an expectation of privacy considering the prior attacks on scholars in this area of study. (Vesweswaran Decl., ¶ 15.) Her concern is that if these documents are made public, researchers will be afraid to weigh in on important public issues (like the development of curriculum for California public schools) and there would be a chilling effect on scholar's ability to continue researching in this area of study. (Visweswarn Decl., ¶ 20.)

While the motive for CAPEEM's request to remove the confidential designation in this case is unclear, it is worth noting that CAPEEM posts material on its website from their cases for promotional purposes. In fact, CAPEEM currently has posted private emails of Professor Witzel under the headings "Harvard Professor and CDE expert colludes with evangelical group and deletes references to their nature on Wikipedia." (Gherini Decl., ¶6.)

The Regents attempted to meet and confer with counsel for CAPEEM on these issues. Plaintiff's counsel indicated that in the absence of a confidentiality agreement between the ad hoc committee members, CAPEEM would not agree to allow The Regents to intervene. He also indicated CAPEEM would oppose any request to alter the language of the protective order because The Regents and Professor Visweswaran have not demonstrated a "legal interest" in the subject matter of the protective order. Also, as indicated in the meet and confer email, counsel for The Regents is unavailable on August 16 and plaintiff's counsel denied a request to continue the hearing date by one week. As a result, The Regents will likely need to file a motion to continue the hearing date for this motion. (Gherini Decl., ¶7.)

## IV. Argument

### A. The Regents of the University of California Should Be Permitted to Intervene in This Matter on Behalf of its Faculty To Protect Private Researcher Communications

Federal Rule of Civil Procedure 24, contemplates that a third party can intervene in an action to protect its interests either as a matter of right, or with the permission of the Court. The Ninth Circuit has stated Rule 24 should be interpreted liberally in favor of potential intervenors and that these broad considerations should be guided by practical, rather than technical distinctions. (Southwest Ctr. For Biological Diversity v. Berg, 268 F.3d 810, 818 (9th Cir. 2001).) Here, The Regents seek to intervene in this action, on behalf of Professor Visweswaran, both as a matter or right, and in the alternative permissively, for the sole purpose of protecting private researcher communications that plaintiff in this matter wants to make public.

#### 1. The Regents qualify for intervention as a right under FRCP 24(a)

On timely motion, FRCP 24(a) permits third party intervention as a right when a third party "claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." (FRCP 24(a)(2).) The Ninth Circuit applies the following four part test to determine whether a party has a right to intervene.

> (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

(Sw. Ctr. For Biological Diversity, 268 F.3d at 817.) The Regents meet all four requirements.

In terms of timeliness, the Ninth Circuit looks to the stage of the proceedings, whether there is any prejudice to the parties and the reason for any delay. (*See* Council v. Glickman, 82 F.3d 825, 836 (9th Cir. 1996).) Here, there was no delay because The Regents started preparation of, and filed this motion, as soon as it became aware that plaintiff was challenging the confidential designation of private researcher communications, including the communications of

- 6 -
MEMORANDUM OF POINTS AND AUTHORITIES

Professor Visweswaran. There is also no prejudice to plaintiff because there is more than adequate notice and time for plaintiff to respond to this motion before the selected hearing date.

The Regents also have a significantly protectable interest in the matter. The plaintiff seeks to make public, and to use for any purpose, the private email communications of a UCSD faculty member. The plaintiff also contends erroneously that the emails were not sent with any expectation of privacy. The Regents must now intervene to protect the privacy of those emails. Courts have found such an interest supports intervention when a third party needs to prevent production of a document. (*See* Sierra Club v. United States EPA, 995 F.2d 1478, 1482 (9th Cir. 1993); United States v. Zolin, 809 F.2d 1411, 1413 (9th Cir. 1987).) As set forth more fully below, Courts have recognized the need to protect the academic freedom of researchers because academic freedom is a "special concern of the First Amendment." (The Regents of the University of California v. Bakke, 438 U.S. 265, 312 (1978).

As a third party, neither Professor Visweswaran, nor The Regents, are in a position to protect the disclosure of private researcher communications without intervening in this action. While The Regents interests may be aligned with the Professor Kenoyer and the University of Wisconsin in seeking to maintain the confidentiality of these communications, The Regents interests have not been fully represented. First, Professor Visweswaran's perspective is more relevant to the issue as all the communications that plaintiff wants de-designated are her private communications. She also is particularly suited to respond to plaintiff's claims that her email communications were not scholarly and were not sent with an expectation of privacy. Second, as indicated in Kenoyer's brief to maintain the confidentiality, in deciding to produce these communications in the first place, the University of Wisconsin applied a Wisconsin public records act analysis, not one based on California law. As a result, The Regents must intervene to ensure Professor Visweswaran's testimony and The Regent's position on the discoverability of private researchers' communications is considered by the Court.

**2. Even if the Court determines The Regents do not have a right to intervene, they should be permitted to intervene under FRCP 24(b)**

FRCP Rule 24(b) provides the Court with discretion to permit intervention by a third party

1  upon timely motion when that party "has a claim or defense that shares with the main action a
2  common question of law or fact."  Permissive intervention generally requires three things: "(1) an
3  independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and
4  fact between the movant's claim or defense and the main action." (<u>Beckman Indus., Inc. v. Int'l</u>
5  <u>Ins. Co.</u>, 966 F.2d 470, 473 (9th Cir. 1992).  The jurisdictional requirement is not an issue in
6  federal question cases like the case at issue. (*See* <u>id</u>.)  The timeliness issue should not be a
7  concern here for the reasons set forth above, nor should common questions of law and fact.  A
8  motion for permissive intervention has long been recognized as the proper vehicle for a third
9  party to challenge or modify a protective order.  (*See* <u>Beckman industries, Inc. v. International</u>
10 <u>Ins. Co.</u>, 966 F.2d 470, 473 (9th Cir. 1992)).  That is essentially what The Regents seek to do here
11 through this motion.  To join in the motion to maintain the confidentiality of private researcher
12 communications to prevent those communications from becoming available to the public, and to
13 slightly modify the subject protective order to add additional protections to ensure the private
14 communications of researchers will be protected.

15     The issue is particularly important to Professor Viswanathan who has been subjected to
16 harassment for her research in the past and due to her knowledge regarding the various campaigns
17 that have been waged against other researchers in her area of study.

18 **B.     The Private Communications of Researchers Should Continue to be Protected Under a Protective Order, and the Current Protective Order Should be Modified to Provide**
19 **Additional Protections for the Designated Communications**

20     Federal Rule of Civil Procedure 26(c) provides that "[t]he court may, for good cause, issue
21 an order to protect a party or person from annoyance, embarrassment, oppression, or undue
22 burden or expense, including . . . requiring that a trade secret or **other confidential research**,
23 development, or commercial information not be revealed or be revealed only in a specified way."
24 (emphasis added.)  The district court has "broad discretion . . . to decide when a protective order
25 is appropriate and what degree of protection is required." <u>Seattle Times Co. v. Rhinehart</u>, 467
26 U.S. 20, 36, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984).  For the reasons set forth below, good cause
27 exists to maintain the confidential designation of the subject private researcher communications.
28

### 1. The Continued Confidential Designation of Private Researcher Communications Is Critical to Protect Academic Freedom

The Regents have long recognized the importance of protecting the academic freedoms of its faculty, researchers and students:

> The University of California is committed to upholding and preserving principles of academic freedom. These principles reflect the University's fundamental mission, which is to discover knowledge and to disseminate it to its students and to society at large. The principles of academic freedom protect freedom of inquiry and research, freedom of teaching, and freedom of expression and publication. These freedoms enable the University to advance knowledge and to transmit it effectively to its students and to the public.

(University of California, *Academic Personnel Manual*, APM 010 (Rev. 2003).)[1] Courts from around the country have agreed that academic freedom should be protected. "Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us and not merely to the teachers concerned. That freedom is therefore a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom." (Keyishian v. Board of Regents, 385 U.S. 589, 602 (1967.)) The Court cautioned that "[t]he essentiality of freedom in the community of American universities is almost self-evident…. To impose any strait jacket upon the intellectual leaders in our colleges and universities would imperil the future of our Nation." (Id.) The Ninth Circuit has also recognized the importance of protecting academic freedom of university professors and has acknowledged the need to protect the "uninhibited exchange of ideas among teachers." (Brown v. Li, 308 F.3d 939, 951 (9th Cir. 2002).

The uninhibited exchange of ideas, the freedom of inquiry, the freedom of research and the freedom of expression are all threatened by the plaintiff's attempts in this case to remove the confidential designation from private researcher communications. In order for these freedoms to be protected, researchers must be free to communicate with each other pertaining to their views on controversial topics and to provide drafts and comments on other researcher's work without fear of reprisal. These concerns are not hypotheticals. Professor Visweswaran has explained in

---

[1] https://www.ucop.edu/academic-personnel-programs/_files/apm/apm-010.pdf

detail the harassment she has experienced in the past, the harassment and intimidation that she is aware other South Asian scholars have been subjected too, and the effects of campaigns of harassment on some researcher's lack of willingness to participate in controversial projects.

Many courts have agreed that subpoenas to third parties can pose a risk to academic freedom. Those courts have quashed subpoenas that sought information similar to the communications at issue here. In Dow Chemical (Dow Chemical v. Allen, 672 F.2d 1262 (7th Cir. 1982)), the court protected notes, reports, working papers and other materials related to academic studies that were still in progress over fear that allowing those materials to be disclosed could have a chilling effect on the researcher's ability to conduct their work. Here, several of the private emails at issue discuss draft reports and debate changes proposed thereto. The freedom to have a private debate among researchers on a controversial topic is precisely the type of communication that needs protection. According to Professor Visweswaran, the purpose of the ad hoc committee of researchers was to develop a report that defined the scholarly consensus on the matters at issue. That required a robust debate amongst researchers because the committee was made up of a diverse group of researchers with expertise in different areas of study and differing views.

Plaintiff's attempt to distinguish the Dow Chemical case on the grounds that the subject communications did not reflect a collection of "original source material" misses the point. The emails clearly depict an effort by many researchers to collect varying viewpoints from each other to inform the committee on each of the issues. At several points, Professor Visweswaran solicits varying viewpoints from committee members. Each committee member was acting as the provider of "source material" for the committee as a whole. As Professor Visweswaran states, if there was a belief that their communications were to become public, committee members would have been much less inclined to be candid and, in some cases, would have been disinclined to participate at all. This is precisely the chilling effect that the Dow Chemical court was mindful of and sought to avoid.

In Cusumano v. Microsoft Corp., 162 F.3d 708, 710 (1st Cir. 1998, the court prevented Microsoft from accessing researcher's communications pertaining to their research because like

journalists, researcher's sources need to be protected so that they continue to be inclined to confide in and provide information to the researcher. The same can be said of the private communications at issue here. The expectation of privacy among the researchers encouraged a frank discussion on the issues that informed the committee, which may not have been possible if participating researchers believed their communications would become publicly available.[2] Just as with <u>Dow Chemical</u>, plaintiff again attempts to distinguish this case by arguing the private communications at issue "show no original research being conducted" and even suggests there was no expectation of privacy amongst the researchers. As Professor Visweswaran lays out in her declaration, this could not be farther from the truth. The research here was the collection of various viewpoints from different researchers and the scholarly debate that transpired regarding the issues discussed. Professor Visweswaran was very much acting like a journalist by collecting facts and opinions from a diverse group of experts and then synthesizing that information into a report. Her declaration also makes clear that the communications were absolutely intended to be private and were not intended to be shared outside the group. The members of the committee were well aware of the campaigns of harassment that had been perpetrated by Hindu nationalists in response to the very thing the committee had tasked itself with doing. Professor Visweswaran was even aware of researchers that declined to participate over fear of retaliation. If the emails show anything, it is how candid the committee was with a discussion of the issues and the expressed concern over how the reports would be perceived by Hindu nationalists. This candor was based on the belief that the communications were private.

### 2.     Any Balancing Weighs in Favor of Protection

In considering whether to allow confidential documents to be declassified it is worth noting at the outset that "the Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." (<u>In re NCAA Student-Athlete Name & Likeness Licensing Lit.</u>, 2012 U.S. Dist. LEXIS 110824 (N.D. Cal. 2012)). The Ninth Circuit has explained that "[n]onparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of litigation to

---

[2] See also Humane Society v. Superior Court.

1  which they are not a party...." (United States v. C.B.S., 666 F.2d 364, 371-72 (9th Cir. 1982).)

2  It is within this context that plaintiff seeks unfettered access to the private
3  communications of researchers.  Plaintiff's opposition to the University of Wisconsin's motion is
4  more notable for what it does not say then what it does.  Nowhere in the brief is there a citation to
5  case law supporting plaintiff's position that researcher communications are "not scholarly" and
6  not entitled to protection simply because the subject matter has a political component to it or,
7  more specifically, concerns the preparation of a report that is provided to a governmental entity.
8  Perhaps more importantly, the brief is silent on why plaintiff believes the communications at
9  issue should be de-classified at all and there is no stated purpose for the declassifying the emails.

10  Plaintiff's brief begins with a citation to Richards v. Pacific Gas and Electric Company for
11  the proposition that the public is entitled to every person's evidence.  However, what plaintiff's
12  brief does not cite is the next paragraph of that opinion which clarifies that "[t[he private litigant
13  and the public have a strong interest in the fair and efficient resolution of civil disputes in courts
14  of law.  On the other hand, society has a profound interest in the research of its scholars, work
15  which has the unique potential to facilitate change through knowledge."  (Richards v. Pacific Gas
16  and Electric Company, 71 F.R.D. 388, 390 (N.D. Cal. 1976).)  In Richards, this court went on to
17  say "[c]ompelled disclosure of confidential information would without question severely stifle
18  research into questions of public policy, the very subjects in which the public interest is greatest."

19  The Richards case is instructive on the need to protect academic research.  In that case,
20  Richards sued PG&E for breach of contract alleging it was owed payment on the design and
21  construction of cooling towers.  During discovery, plaintiff subpoenaed a third party Harvard
22  professor who had conducted research that included interviewing PG&E employees.  He withheld
23  from production the identity of the employees and what they said.  Like the Court in Cusomano,
24  the Richards court analogized the need to protect academic research with the need to protect
25  journalists.  It defined some factors to determine if protecting the information is justified which
26  included looking at: "the nature of the proceeding, whether the deponent is a party, whether the
27  information sought is available from other sources, and whether the information sought goes to
28  the heart of the claim." (Richards, 71 F.R.D. at 390.)  In Richards the court recognized it was a

civil matter and the professor was a third party which favored protecting the materials. (Id.) The Court also thought it was important that the research was not conducted with an eye towards litigation and had its independent purpose. (Id.) Finally, and most importantly for this analysis, the Court found the information largely supplementary. (Id.)

Just as in Richards, here we have a civil matter where the academic research materials are sought from third parties. Just as in Richards, the subject documents were created for the independent purpose of preparing a report for the CDE. Which is to say, the communications were not done with an eye toward this litigation. Most importantly, the communications sought here appear to not only be supplementary, but appear to be irrelevant to the matters at issue in the case.

There should be no dispute that following the State's Motion to Dismiss, the only claim remaining at issue in the case is under the "primary effect" prong of the Establishment Clause. That claim requires an analysis of whether a hypothetical reasonable observer in the community would conclude that the California state curriculum disfavors Hinduism in some way. (*See* Alvarado v. City of San Jose, 94 F.3d 1223, 1232 (9th Cir. 1996).) A hypothetical reasonable observer would have no occasion to review the private communications of researchers, like those of Professor Visweswaran, exchanged during the development phase of a report. As a result, those communications are irrelevant to this case. Nor would that hypothetical reasonable person be privy to various drafts of a report, even if the final version of that report becomes a public document. Plaintiff's opposition brief pays short shrift to this issue and dismisses it with a citation to McCreary County v. ACLU, which plaintiff claims supports a broad reach of discovery because "historical context" and the "specific sequence of events" leading up to a government action sould be considered. (*See* McCreary v. ACLU of Kentucky, 545 U.S. 844, 862 (2005).) Plaintiff misreads and misinterprets the McCreary case. While the Court uses the terms cited by plaintiff, the Court clearly states that the scope of understanding of an objective observer would include the current text or government action, as well as the community's objective memory of events including recollection of "the 'text, legislative history, and implementation of the statute,' or ***comparable official act***." (*See* id.) Clearly, McCreary does not expand the knowledge of an

objective observer to private communications that others had and things outside the public record, but merely allows the inquiry to include the history of what has publicly transpired.  As a result, private communications of researchers that were never incorporated into the public record are irrelevant to the remaining issues in the case.

For these reasons, just as in Richards v. PG&E the factors here clearly weigh in favor of protecting the researcher communications.

### C. The Regents Request Slight Modifications to the Protective Order to Add Necessary Protections For the Private Researcher Communications at Issue

The protective order at issue in this case primarily includes language from the Northern District of California approved form protective order, with some slight modifications requested by the parties.  Section 9(a) of the order indicates the order applies to documents produced by a non-party.  That section also contemplates that "[n]othing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections."  For the reasons set forth herein, The Regents as a Non-Party seek the following modifications to the protective order.

Professor Visweswaran described the history and significance of the propagation of campaigns of harassment and intimidation perpetrated by Hindu nationalists in the United States against certain scholars of South Asian studies.  She discussed the impact those campaigns have had on her own scholarship and experiences.  As a result, the evidence supports protecting her private communications.  Of particular concern is the fact CAPEEM has posted promotional material on its website, including the private communications of other researchers.  It uses derogatory language on the website links to those communications like "Harvard Professor and CDE expert colludes with evangelical group and deletes references to their nature on Wikipedia."  The concern would be that Professor Visweswaran's emails would be improperly posted on the website and used for promotional purposes or to encourage further harassment of her or others.

For these reasons, The Regents request the following modifications:

- Paragraph 7.2(b): DELETE in its entirety.  This section allows confidential materials to be viewed by the parties, its officers, directors and employees. Because of the history of harassment and intimidation, there is heightened concern

regarding the misuse of materials designated as confidential. As a result, The Regents request disclosure of private researcher communications be limited to "attorneys eyes only." Not only has plaintiff not articulated any reason why there is a need to de-designate these communications, but there is no reason why the client needs to review the emails. Especially considering the limited relevance any emails have to the remaining issues in the case.

- Paragraph 10: ADD The Regents as an entity that will be notified if there is an unauthorized disclosure or use of the documents.
- Paragraph 13: ADD The Regents as an entity that will be notified of the destruction of the documents following conclusion of the lawsuit.

**V.   Conclusion**

For the reasons set forth herein, The Regents the Court allow it to intervene in this matter for the purpose of joining the motion to maintain the classification of emails as confidential and to modify the terms of the protective order to add additional protections to ensure that the private researcher communications that have previously been produced will not be misused.

Dated:  July 5, 2018

OFFICE OF THE GENERAL COUNSEL
UNIVERSITY OF CALIFORNIA

By: _____
　　John Gherini

Attorneys for Third-Party
THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA