UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA PARENTS FOR THE EQUALIZATION OF EDUCATIONAL MATERIALS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TOM TORLAKSON, et al.,<br><br>Defendants. | Case No. 17-cv-00635-CRB (JSC)<br><br>**ORDER RE: NONPARTY JONATHAN KENOYER'S MOTION TO MAINTAIN CONFIDENTIAL DESIGNATION; NONPARTY THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO INTERVENE AND MOTION TO MAINTAIN CONFIDENTIAL DESIGNATION AND TO AMEND PROTECTIVE ORDER; ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL**<br><br>Re: Dkt. Nos. 141, 145, 147, 151, 152, 153, 156. |

Plaintiffs California Parents for the Equalization of Educational Materials ("CAPEEM") and several individually-named parents of public school students (collectively, "Plaintiffs") bring this action against officials at the California Department of Education and members of the State Board of Education (collectively, "State Defendants"), as well as four California School Districts, alleging discrimination against Hinduism in the California public school curriculum. (*See generally* Dkt. No. 1.)[1] Now pending before the Court are nonparty Jonathan Kenoyer's motions to maintain confidential designation (Dkt. No. 141) and file under seal (Dkt. No. 145), nonparty The Regents of the University of California's ("The Regents") motion to intervene, maintain confidential designation, and amend protective order (Dkt. No. 151), and Plaintiffs' administrative motions to file under seal (Dkt. Nos. 147, 153, 156) and motion for leave to file a sur-reply (Dkt. No. 152.). After carefully reviewing the parties' briefing, the Court concludes that oral argument

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

is unnecessary, *see* Civ. L.R. 7-1(b), VACATES the August 23, 2018 hearing, and GRANTS The Regents' motion to intervene; GRANTS Prof. Kenoyer's and The Regents' motions to maintain confidential designation; GRANTS in part The Regents' motion to amend the protective order; and GRANTS Plaintiffs' motion for leave to file a sur-reply. The Court holds in abeyance Plaintiffs' and Prof. Kenoyer's administrative motions to file under seal.

## BACKGROUND AND PROCEDURAL HISTORY

The factual background of this case is detailed in Judge Breyer's July 13, 2017 order granting in part and denying in part Defendants' motion to dismiss. (*See* Dkt. No. 119.) As relevant here, Jonathan Kenoyer is a Professor of Anthropology at the University of Wisconsin "with a primary focus on the Indus Civilizations—India and Pakistan." (Dkt. No. 144 at ¶ 1.) Prof. Kenoyer's "publications include monographs on the Indus civilization as well as numerous articles, a grade school book on ancient South Asia and even a coloring book on the Indus cities for children." (*Id*.) Third party Kamala Visweswaran is a Professor of Ethnic Studies at the University of California, San Diego, where she has taught since 2015. (Dkt. No. 151-2. at ¶ 1.)[2] Prior to that, Prof. Visweswaran was "an Associate Professor of Anthropology and South Asian Studies at the University of Texas." (*Id*.) Professors Kenoyer and Visweswaran are both members of the South Asia Faculty Group ("Faculty Group"), an ad hoc committee of university professors that provided reports to the California State Board of Education ("Board of Education") in November 2015 and February 2016 following the Faculty Group's review of Board of Education's proposed curriculum framework. (Dkt. Nos. 142 at 2 & 151-2 at ¶¶ 14-15, 18.)

### A. Subpoena of Prof. Kenoyer

Plaintiffs served Prof. Kenoyer with a subpoena for documents on September 19, 2017. (Dkt. No. 144 at ¶ 3.) "The subpoena sought, among other things, communications of members

---

[2] Plaintiffs argue in their opposition The Regents' motion to intervene that "[t]he declaration of Kamala Visweswaran (Dkt. [No.] 151-2) is virtually devoid of admissible evidence and should be stricken." (Dkt. No. 156-2 at 8.) Plaintiffs acknowledge, however, that "Professor Visweswaran lays a [sufficient] foundation establishing that she is a professor at the University of California at San Diego and a participant in some of the email communications that are the subject of the Kenoyer motion to maintain confidentiality." (*Id*.) For purposes of factual background, the Court relies on none of the specific statements Plaintiffs take issue with. The Court addresses Plaintiffs' specific evidentiary objections in detail below.

2

1  [of] the [Faculty Group] relating to the development of the History-Social Science Framework[3] for
2  California Public Schools." (Dkt. No. 147-3 at 2-3.) The parties and Prof. Kenoyer then entered
3  into a Stipulated Protective Order ("Protective Order") on January 23, 2018, covering, among
4  other things, "information produced by a Non-Party in this action and designated as
5  'CONFIDENTIAL.'" (Dkt. No. 130 at ¶ 9(a).)

Thereafter, in response to Plaintiffs' subpoena Prof. Kenoyer produced 141 documents designated as "confidential." (Dkt. No. 144 at ¶ 6.) On May 24, 2018, Plaintiffs challenged Prof. Kenoyer's confidential designation as to 67 of those documents. (*Id*. at ¶ 7.) The 67 documents consist of communications in 2015 among the Faculty Group[4] regarding the Board of Education's's proposed Framework and previous theories espoused by Prof. Kenoyer. (Dkt. Nos. 142 at 2 & 145-3 at 1-67.) The California Department of Education requested the Faculty Group to review the Framework and provide a report of recommendations. (Dkt. No. 145-3 at 1.)

On June 6, 2018, Plaintiffs and Prof. Kenoyer met and conferred but could not resolve their disagreement over the 67 documents at issue. (Dkt. Nos. 143 at ¶ 3 & 144 at ¶ 9.) Pursuant to the Protective Order, Prof. Kenoyer then timely filed the instant motion to retain the confidentiality of the documents identified by Plaintiffs.[5] (*See* Dkt. No. 130 at ¶ 6.3) (requiring a party to serve its motion to retain confidentiality "within 21 days of of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute.")

---

[3] As described in Judge Breyer's order, the "Framework" refers to guidance adopted in 2016 by the California State Board of Education that provides "teachers, administrators, and publishers in the teaching of history and social science . . . [with] an overview of the historical material corresponding to" a set of adopted "Standards" that "outline [ ] the topics and content that California public school students need to acquire at each grade level." (Dkt. No. 119 at 2.)

[4] The initial Faculty Group email includes 21 professors from the following schools: University of California ("U.C."), Berkeley; U.C. Davis; U.C. Los Angeles; U.C. San Diego; University of Chicago; University of Delaware; Indiana University Bloomington; University of Michigan; New York University; University of San Francisco; San Francisco State University; Stanford University; and the University of Wisconsin.

[5] The State Defendants do not oppose Mr. Kenoyer's motion to maintain confidential designation, and submitted a purported "reply" that does not directly address the instant motion or the 67 documents at issue. (*See generally* Dkt. No. 150.) The State Defendants' reply discusses instead their broader discovery concerns regarding issues of relevance and scope that are not before the Court at this time. (*Id*. at 2.) Thus, the Court declines to consider the State Defendants' reply or address the arguments set forth therein.

### B. Subpoena of Prof. Visweswaran

Plaintiffs served Prof. Visweswaran with a subpoena for documents on April 18, 2018. (Dkt. No. 151-2 at ¶ 4.)[6] The subpoena requested Prof. Visweswaran's "communications with other researchers pertaining to the development of [the Faculty Group] reports that were later submitted to the California Department of Education." (Dkt. No. 151 at 5.) On May 1, 2018, The Regents objected to the subpoena on behalf of Prof. Visweswaran, (Dkt. No. 151-1 at 23-25), "on the grounds the scope of the subpoena was unduly burdensome because it sought materials not relevant to the issues remaining in the case and on the grounds the subpoena sought the private communications of researchers that should be protected," (Dkt. No. 151 at 5).

Upon learning that Plaintiffs challenged the confidential designation of the 67 documents at issue, on June 5, 2018, The Regents emailed Plaintiffs expressing The Regents' "object[ion] to declassifying those communications" because they reflect "confidential communications of Professor Visweswaran" and "private communications between researchers with no relevance to the remaining issues in the case." (Dkt. No. 151-1 at 27.) The Regents sought to discuss with Plaintiffs "next steps" regarding the documents. (*Id.*) Plaintiffs responded that they "[did not] have an opinion on how [The Regents] proceed with the U Wisc documents." (*Id.*) Further attempts to meet and confer and reach an agreement were similarly unsuccessful. (*Id*. at 30-34.) On July 5, 2018, The Regents filed its motion to intervene and motion to maintain confidential designation and to amend the protective order.

## EVIDENTIARY OBJECTIONS

As a preliminary matter, the Court addresses Plaintiffs' evidentiary objections to Prof. Visweswaran's declaration. Civil Local Rule 7-5(b) provides:

> An affidavit or declarations may contain only facts, must conform as much as possible to the requirements of Fed. R. Civ. P. 56(e), and must avoid conclusions and argument. Any statement made upon information and belief must specify the basis therefor. An affidavit or declaration not in compliance with this rule may be stricken in whole or in part.

---

[6] Prof. Visweswaran's declaration states that a "true and correct copy of the subpoena is attached hereto as Exhibit A." (Dkt. No. 151-2 at ¶ 4.) However, the subpoena is not attached to her declaration.

4

Federal Rule of Civil Procedure 56(e) discusses steps a court may take if a party fails to comply with Rule 56(c), which requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Plaintiffs object to the declaration of Prof. Visweswaran, (Dkt. No. 151-2), on the grounds that it lacks foundation "to show personal knowledge of any meaningful facts asserted in her declaration" and contains assertions that "are vague characterizations rather than recitations of fact." (Dkt. No. 156-2 at 8.) The Court sustains, in whole, Plaintiffs' specific objections to the following statements in Prof. Visweswaran's declaration:

> Scholars, journalists and writers in India who have been critical of the influence of Hindu nationalists have been subjected to threats, public campaigns of intimidation, and court cases.

(Dkt. No. 151-2 at ¶ 6.)

> Within the United States, Hindutva groups use aggressive tactics to harass, intimidate, assault and threaten American scholars.

(*Id*. at ¶ 7.)

> Some researchers contacted initially agreed to serve on the committee, but then withdrew citing concern over harassment and out of fear of retaliation from Hindu nationalist groups if their involvement were to be made public. Others declined to serve at the outset because they had already faced harassment. The committee's recommendations were also the subject of a virulent campaign of defamation and one consultant to the committee became the subject of a concerted campaign of harassment and intimidation during the final stages of the committee's deliberations in the spring of 2016. After the public comment period ended, the committee continued to discuss and follow other aspects of the textbook adoption process, but because of the harassment and negative press, no member of the ad hoc committee was willing to consider becoming a textbook content evaluator. Other colleagues who followed the distorted and negative press were also too intimidated to step forward to play this role.

(*Id*. at ¶ 13.)

> Neither the Board of Education, nor any other party outside of the ad hoc committee had access to these communications, which committee members understood to be confidential. All of our communications were conducted with the expectation of privacy and related to research, draft reports and testimony.

5

(*Id*. at ¶ 15.) The Court sustains, in part, Plaintiffs' specific objections to the following statements:

> As a result of my participation in that process, and the creation of the aforementioned reports, I and others received harassing communications from Hindu nationalists.

(*Id*. at ¶ 10.) The Court sustains the objection as to the phrase "and others," and orders that phrase stricken from paragraph 10. The Court overrules Plaintiffs' objection to the following statement:

> I am aware that the California Parents for the Equalization of Education Materials (CAPEEM), the plaintiff in this case, filed a lawsuit against the State of California pertaining to the process used to develop the curriculum in the 2004 to 2005 timeframe. I am aware that my colleague and co-author Michael Witzel received a subpoena in connection with his testimony submitted to the California Board of Education in that litigation. I understand the Court [in that case] did not require him to turn over his private emails in that case. The subpoena served on me, nonetheless, requests my private communications with Dr. Witzel.

(Dkt. No. 151-2 at ¶ 11.) The Court finds that Prof. Visweswaran's statement is based on her personal knowledge of the lawsuit involving Dr. Witzel and does not constitute an impermissible "argument."

## DISCUSSION

### I. Motion to Intervene

Federal Rule of Civil Procedure 24 provides for two types of intervention: intervention as a matter of right and by permission of the Court. The Regents, on behalf of Prof. Visweswaran, move to intervene in this matter "both as a matter o[f] right, and in the alternative permissively," "solely for the purpose" of maintaining the confidential designation of the 67 documents at issue and amending the protective order.[7] (Dkt. No. 151 at 10.) The gravamen of the Regents'

---

[7] Plaintiffs argue that The Regents' motion to intervene is procedurally defective under Rule 24(c) because it "combine[s] a motion to intervene and a motion to maintain confidentiality of documents into one motion[,]" thereby "conflat[ing] . . . the motion to intervene with the underlying relief sought." (Dkt. No. 156-2 at 4.) Plaintiffs' are correct that Rule 24(c) requires that a motion to intervene "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Compliance with the "literal terms of Rule 24" is not required, however, where the "petition fully state[s] the legal and factual grounds for intervention." *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) (rejecting "technical objections" based on alleged noncompliance with Rule 24(c)). Here, The Regents "describe[ ] the basis for intervention with

argument is that intervention is proper because all of the emails Prof. Kenoyer seeks to maintain as confidential are either to or from Prof. Visweswaran. (*Id.* at 10-11.) Because The Regents do not seek to become a party to this case and litigate the merits of the sole remaining claim at issue, but instead seek to intervene for a limited purpose, the Court finds that permissive intervention under Rule 24(b) is proper, and need not address intervention as a matter of right under Rule 24(a).

Rule 24(b)(1)(B) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In the Ninth Circuit, permissive intervention generally requires: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom From Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). The Regents satisfy these requirements.

First, permissive intervention does not require independent jurisdictional grounds where putative "intervenors do not seek to litigate a claim on the merits" or "become parties to the action." *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). 473. Here, The Regents move to intervene for a limited purpose—to join in Prof. Kenoyer's motion to maintain confidentiality and to amend the Protective Order. Thus, the Court is being asked "only to exercise that power which it already has." *See id.* (finding no independent jurisdictional basis needed where intervenor "ask[s] the court only to exercise that power which it already has, i.e., the power to modify the protective order."). Second, Plaintiffs do not challenge the timeliness of The Regents' motion, and the Court finds that the motion is timely. The Regents filed their motion to intervene one month after learning that Plaintiffs challenged Prof. Kenoyer's confidential designations, and three weeks after Prof. Kenoyer's motion to maintain confidential designation. Thus, the Regents' motion to intervene does not prejudice Plaintiffs' ability to

---

sufficient specificity to allow the [Court] to rule." *Id.* at 475. Thus, the motion is proper. Nonetheless, the Court recognizes Plaintiffs' "submi[ssion] that the Court should rule on the motion to intervene first and, only if granted, consider the separate question of whether the Regents are entitled to the ultimate relief they seek." (Dkt. No. 156-2 at 7.) That is the approach the Court takes here.

prosecute their case. Third, the "common question of law or fact" requirement is met because The Regents' motion is limited only to intervention in nonparty Prof. Kenoyer's motion to maintain confidential designation and to amend the Protective Order, and Prof. Visweswaran is either the author or recipient of every email at issue. Thus, Prof. Visweswaran has the same privacy interest in those documents as Prof. Kenoyer. *See Beckman*, 966 F.2d at 474 (affirming district court's less stringent commonality determination where intervenors were "not becoming parties to the litigation," but sought instead "to intervene only for the purpose of modifying a protective order."). Furthermore, Plaintiffs served Prof. Visweswaran with a subpoena seeking the *same* material and Prof. Visweswaran timely objected.

As relevant to permissive intervention under Rule 24(b), Plaintiffs argue that The Regents' motion should be denied because "The Regents do not have a claim or defense that shares with the "main action" a common question of law or fact within the meaning of Rule 24(b)(1)(B)." (Dkt. No. 156-2 at 15.) Further, Plaintiffs' argue that there is "no case to support the proposition that 'main action' in Rule 24 means anything other than what the plain language dictates: the merits of the lawsuit itself." (*Id.*) Plaintiffs are wrong; *Beckman* is such a case.

The intervenors in *Beckman* were parties to a state court action involving the federal defendant where, as in the federal case, "the scope of coverage of [federal-defendant's insurance policies] was at issue." *Beckman*, 966 F.2d at 471. The intervenors sought intervention solely to modify a protective order to obtain depositions prepared in the federal case. *Id*. Defendant argued that such intervention was improper because "Rule 24(b) only permits intervention for the purpose of litigating a claim on the merits in a pending action, in order to dispose of related controversies together." *Id.* at 472. The court rejected that argument, and "recognize[ed] that Rule 24(b) permits limited intervention for the purpose of challenging a protective order." *Id*. at 473. Further, defendant in *Beckman* argued "that the words 'claim or defense' in Rule 24(b) refer only to the type of valid claim or defense that can be basis for intervention in an actual or impending lawsuit." *Id*. Again, the court rejected defendant's argument, stating:

> The issue of interpretation of the [insurance] policy [at issue] supplies a sufficiently strong nexus between the district court action and the state actions to satisfy the commonality requirement.

> Further specificity, e.g., that the claim involve the same clause of the policy, or the same legal theory, is not required when the intervenors are not becoming parties to the litigation. There is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order.

(*Id*. at 474.) Similarly here, The Regents' do not seek to become parties to the litigation but instead seek to intervene for a strictly limited purpose. Further, there is sufficient commonality of fact and law between Prof. Visweswaran's claim of a privacy interest in the documents at issue and Prof. Kenoyer's motion to maintain the confidential designation of those documents under the Protective Order.

Accordingly, the Court grants The Regents' motion to intervene for the limited purpose of joining Prof. Kenoyer's motion to maintain confidential designation and amending the Protective Order.

## II. Motion to Maintain Confidential Designation

The confidentiality of the documents at issue is governed by Federal Rule of Civil Procedure 26(c). (*See* Dkt. No. 130 at ¶ 2.2) (defining "confidential" information as "information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule Civil Procedure 26(c).") "It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999). Rule 26(c) provides, in part, that "[t]he court may, for good cause, issue an order . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).

Where, as here, an existing "protective order was a stipulated order and no party ha[s] made a 'good cause' showing, then the burden of proof . . . remain[s] with the party seeking protection." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (internal quotation marks and citation omitted) (alterations in original). "If a court finds

particularized harm will result from disclosure of information to the public, then it balances the public [interests in disclosure] and private interests [in confidentiality] to decide whether a protective order is necessary." *Gen. Motors Corp.*, 307 F.3d at 1211. District courts have "broad discretion" under Rule 26(c) "to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times v. Rhinehart,* 467 U.S. 20, 36 (1984).

It bears emphasizing that the issue before the Court is not whether the confidential nature of the 67 documents precludes disclosure to Plaintiffs. Prof. Kenoyer produced the documents in response to Plaintiffs' subpoena, and does not dispute that disclosure to Plaintiffs is proper. Rather, the sole issue is whether Plaintiffs can disclose the documents to the public, or whether those documents were properly designated by Prof. Kenoyer as "confidential" and thus fall within the scope of the Protective Order.

Claire Dalle Molle, legal counsel for the University of Wisconsin and Prof. Kenoyer in this matter, designated the documents at issue as "confidential" after "employ[ing] a public records-type balancing test, attempting to balance need in this litigation with the confidential nature of these records, and their potential for harm if released." (Dkt. No. 144 at ¶ 12.) Invoking principles of "academic freedom" that protect scholarly research from interference, Prof. Kenoyer argues that the documents are entitled to protection because they are "confidential academic communications between scholars on their area of scholarship." (Dkt. No. 142 at 2.) Prof. Kenoyer argues that the email "communications were conducted in a format where [the participants] expected that they would not be disclosed[,]" and the emails were "sent only to the [Faculty Group] and they are relating to text book review undertaken for the State of California." (*Id.* at 7.) Prof. Kenoyer insists that "[f]aculty members must be afforded privacy in these exchanges in order to pursue knowledge and develop lines of argument without fear of reprisal for controversial findings and without the premature disclosure of those ideas." (*Id.* at 4.) The gravamen of Prof. Kenoyer's argument is that disclosure of such communications outside of this litigation will have a chilling effect on academic research and collaboration among the Faculty Group.

Prof. Visweswaran similarly argues:

10

> If it is known that private emails with researchers in my area of study can become public documents, researchers will be afraid to speak frankly and weigh in on important public issues. As a result, there would be a chilling effect on scholar's ability to continue research in this area of study in the future.

(Dkt. No. 151-2 at ¶ 20.) Plaintiffs counter that although the documents at issue consist of "communications among professors," they do not constitute "research" or "scholarship," but instead reflect "political activism" that is not entitled to protection from public disclosure. (Dkt. No. 147-3 at 2.)

Neither Prof. Kenoyer nor Plaintiffs have identified on point case law regarding the confidentiality of the type of intra-faculty communications presented here, and the Court is unable to find any direct authority. Prof. Kenoyer urges the Court to consider the factors set forth in *Zaustinsky v. Univ. of California*, 96 F.R.D. 622 (N.D. Cal. 1983), *aff'd*, 782 F.2d 1055 (9th Cir. 1985); however, those factors address the issue of privilege under Federal Rule of Evidence 501 in the context of a motion to compel. Again, Plaintiffs here are not seeking to compel production of the documents at issue—Prof. Kenoyer has produced them. Furthermore, Prof. Kenoyer is not asserting that the documents are privileged, but is instead seeking only to maintain their confidential designation under the Protective Order. The other cases cited by Prof. Kenoyer are distinguishable from the facts presented here for the same reason. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 710 (1st Cir. 1998) (affirming district court's denial of plaintiff's "motion to compel production of research materials compiled by two academic investigators"); *Dow Chemical v. Allen*, 672 F.2d 1262, 1274-78 (7th Cir. 1982) (discussing principles of "academic freedom" in affirming district court's refusal to compel production of "raw research data" and finding that "enforcement of the subpoenas carries the potential for chilling the exercise of First Amendment rights."); *Richards of Rockford, Inc. v. Pacific Gas & Elec. Co.*, 71 F.R.D. 388 (N.D. Cal. 1976) (denying motion to compel discovery of third-party professor's research materials and sources).

In contrast to the issues of privilege and "academic freedom" discussed in the cases above, a motion to maintain confidential designation requires only a showing of "good cause"— particularized harm and a balancing of the private and public interests in favor of nondisclosure.

11

*Gen. Motors Corp.*, 307 F.3d at 1211. Professors Kenoyer and Visweswaran sufficiently demonstrate a risk of particularized harm if the documents at issue are publicly disclosed—the chilling of shared research among the Faculty Group.

The documents reflect scholarly deliberation and discussion of research between experts on a topic that is politically-charged, as evinced by the contentious nature of this litigation. Thus, it is likely that Faculty Group members would refuse to participate in future curriculum reviews if their internal communications were made public. Indeed, Prof. Visweswaran's declaration states that she "received harassing communications" as a result of her work on previous review committees "regarding textbook content for California public schools." (Dkt. No. 151-2 at 3.)

The Court also finds that the balance of public and private interests weighs in favor of retaining the confidentiality of the documents at issue. In *Pacific Gas*, the court noted that the exercise of a court's "broad discretion in supervising the course and scope of discovery . . . often requires that the court balance the interests of the private litigant in obtaining the information sought against the [public] costs of providing it." 71 F.R.D. at 389. Here, however, Plaintiffs already have the information and seek only to make it public. Thus, the balance of interests is between Professors Kenoyer and Visweswaran's interest in keeping the documents confidential and the public's interest in obtaining the documents. The Court finds that the balance weighs in favor of the former based on the likelihood of a chilling effect on the scholarly research of Professors Kenoyer and Visweswaran and other members of the Faculty Group. Simply put, the Court finds no countervailing public interest—other than the presumption that "that the public is entitled to every person's evidence," *Pacific Gas*, 71 F.R.D. at 389 (citing *Blackmer v. United States*, 284 U.S. 421 (1932)) —militating against retaining the confidential designation of the researchers' communications. And although it is not their burden to do so, Plaintiffs' identify no countervailing public benefit.

The Court disagrees with Plaintiffs' characterization of the communications as "pure advocacy and strategizing by the professors to advance their partisan views and keep out the input of Hindus." (*See* Dkt. No. 5.) That description is contradicted by the context and overall content of the messages. The Court finds that the overall content of the challenged documents, which

12

1  includes detailed discussion of scholarship on geoarchaeology, Hinduism, and Indian civilization,
2  falls squarely in the realm of academic research and scholarship. Further, the opinions expressed
3  by Prof. Visweswaran and other members of the Faculty Group in the context of such discussions
4  do not alter the discussions' primary focus on whether the proposed Framework was consistent
5  with then-current scholarship.

6  The Court cautions that its ruling here is under the "good cause" standard. When and if a
7  document marked as "confidential" is submitted to the Court in connection with a dispositive
8  motion or at trial, documents can be sealed only if there is a "compelling" reason for doing so.
9  *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). It is in that context
10 that the Court can consider the parties' respective arguments about the relevance or lack therefore
11 of the emails. Here, the only question is whether the non-parties have shown good cause for
12 keeping documents produced in discovery, but not filed in connection with a dispositive motion or
13 trial, confidential from the public. They have done so for nearly all of the emails.

14 However, not all of the emails included in the 67 documents are solely between the Faculty
15 Group members. (*See* Dkt. No. 145-3 at 7, 19, 20.) Emails on November 2, 2015 from Kenneth
16 McDonald of the California Department of Education to Prof. Visweswaran (*id*. at 7), and on
17 December 7, 2015 between Prof. Visweswaran and Kenneth McDonald (*id*. at 19-20), are not
18 entitled to the "confidential" designation.

19 Accordingly, and in the exercise of its "substantial latitude" under Rule 26(c) "to decide
20 when a protective order is appropriate and what degree of protection is required," *Seattle Times,*
21 467 U.S. at 36, the Court grants Prof. Kenoyer's motion to maintain the confidential designation
22 of documents 1-6, 8-18, and 21-67. The portions of documents 7 and 19 that include emails solely
23 between members of the Faculty Group also retain their confidential designation. The Court
24 denies Prof. Kenoyer's motion as to document 20.

25 **III. Motion to Amend Protective Order**

26 The Court retains the power to modify any protective order it has entered. *Empire Blue*
27 *Cross & Blue Shield v. Janet Geeson's A Place For Us, Inc.*, 62 F.3d 1217, 1219 (9th Cir. 1995);
28 *Beckman*, 966 F.2d at 473. Having granted The Regents permissive intervention for a limited

purpose under Rule 24(b) and having determined that nearly all of the documents at issue retain their confidential designation, the Court next addresses The Regents' motion to amend the Protective Order. The Regents move to amend the Protective Order as follows: (1) delete paragraph 7.2(b) in its entirety; (2) add The Regents to paragraph 10 "as an entity that will be notified if there is an unauthorized disclosure or use of the documents"; and (3) add The Regents to paragraph 13 "as an entity that will be notified of the destruction of the documents following conclusion of the lawsuit." (Dkt. No. 151 at 18-19.) Neither Prof. Kenoyer nor Plaintiffs provide argument in opposition to The Regents' proposed modifications.

Pursuant to paragraph 7.2(b) of the Protective Order, a receiving party may disclose any information designated as "confidential" to "the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the 'Acknowledgment and Agreement to Be Bound.'" (Dkt. No. 130 at ¶ 7.2(b).) The Regents seek to delete paragraph 7.2(b) based on an alleged "history of harassment and intimidation" against researchers by Plaintiff CAPEEM. (Dkt. No. 151 at 18.) The Regents argue:

> Because of [this history], there is heightened concern regarding the misuse of materials designated as confidential. As a result, The Regents request disclosure of private researcher communications be limited to "attorneys eyes only." Not only has plaintiff not articulated any reason why there is a need to de-designate these communications, but there is no reason why the clients need to review the emails. Especially considering the limited relevance any emails have to the remaining issues in the case.

(*Id*. at 18-19.) The Court denies The Regents' request. The Regents do not allege that Plaintiffs have violated court orders in the past and the Court has no reason to believe that Plaintiffs will violate this Court's Order that the emails remain subject to the Protective Order. Further, by its terms, paragraph 7.2(b) provides protection from unauthorized disclosure or "misuse of materials" by limiting disclosure to the individuals "to whom disclosure is reasonably necessary for this litigation and who have signed the 'Acknowledgment and Agreement to Be Bound.'" (Dkt. No. 130 at ¶ 7.2(b).) The Court grants The Regents' proposed modifications to paragraphs 10 and 13.

14

## IV. Motion to File Sur-Reply

Under Civil Local Rule 7-3(d), once a reply has been filed, "no additional memorandum, papers or letters may be filed without prior Court approval." N.D. Cal. Civ. L.R. 7-3(d). Pursuant to Civil Local Rule 7-3(d), Plaintiffs seek leave to file a sur-reply in support of their opposition to Mr. Kenoyer's motion to maintain confidential designation. (Dkt. No. 152.) The Court grants Plaintiffs' motion.

## V. Administrative Motions to Seal

A party seeking to seal documents must comply with the Civil Local Rules, which provide that sealing is appropriate only where the requesting party "establishes that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law." N.D. Cal. Civ. L.R. 79-5(b). As discussed above, Prof. Kenoyer and Prof. Visweswaran have demonstrated good cause for maintaining the confidential designation of the documents at issue. In addition, however, Prof. Kenoyer's request to seal must conform with the requirements set forth under Civil Local Rule 79-5(d). *Id.*

### A. Jonathan Kenoyer's Motion to Seal

Prof. Kenoyer moves to file under seal the 67 documents that are the subject of his motion to retain confidential designation, (Dkt. No. 141). (Dkt. No. 145.) Pursuant to Civil Local Rule 79-5(d)(B), an administrative motion to seal must include "[a] proposed order that is narrowly tailored to seal only the sealable material, and which lists in table format each document or portion thereof that is sought to be sealed." Prof. Kenoyer's motion fails to comply with the Local Rules because it does not include a proposed order. As discussed below, however, because the material sought to be sealed is the same as the material at issue in the underlying motion, and good cause being shown, the Court will hold in abeyance Prof. Kenoyer's administrative motion to seal to allow time for him to correct this procedural defect.

### B. Plaintiffs' Motions to Seal

Pursuant to Civil Local Rule 79-5(e), Plaintiffs move to file under seal its opposition to Mr. Kenoyer's motion to maintain confidential designation. (Dkt. No. 147.) In support of its motion, Plaintiff's submits the declaration of Glenn Katon, who explains:

> Although Plaintiffs' do not believe the emails Kenoyer seeks to keep confidential are entitled to such confidentiality, in order to comply with the terms of the protective order, they must file their opposition under seal, because it recounts and analyzes the content of material currently subject to the protective order.

(Dkt. No. 147-1 at ¶ 8.) Furthermore:

> [B]ecause even the parts of the case law argued by Plaintiffs could reveal characteristics of the emails Plaintiffs seek to analogize or distinguish, Plaintiff submits that the opposition should be sealed in its entirety in order to comply with the protective order.

(*Id*. at ¶ 9.) Plaintiffs also move to file under seal their unredacted motion for leave to file sur-reply in opposition to Mr. Kenoyer's motion to retain confidential designation, citing "identical grounds" as those detailed by Mr. Katon above. (Dkt. No. 153.) According to Plaintiffs, "[t]he declaration in support (Dkt. No. 147-1) of the June 28 motion also applies to the instant motion." (Dkt. No. 153 at 1.) Finally, Plaintiffs also seek to file under seal their opposition to The Regents motion to intervene. (Dkt. No. 156.) Again, Plaintiffs state that the grounds for sealing "are identical" to those set forth in their initial administrative motion to seal, (Dkt. No. 147), and direct the Court's attention to Mr. Katon's declaration in support of that motion, (Dkt. No. 147-1). (Dkt. No. 156 at 1.)

Civil Local Rule 79-5(e) provides that if, as here, "the Submitting Party is seeking to file under seal a document designated as confidential by the opposing party or a non-party pursuant to a protective order," the Designating Party (here, Prof. Kenoyer) must file within four days of the Submitting Party's motion "a declaration as required by subsection 79-5(d)(1)(A) establishing that all of the designated material is sealable." N.D. Cal. Civ. L.R. 79-5(e)(1). Prof. Kenoyer did not file a declaration in response to any of Plaintiffs' motions to seal establishing that all the materials are sealable, as required by Local Rule 79–5(e)(1).

Pursuant to Civil Local Rule 79-5(e)(2):

> If the Designating Party does not file a responsive declaration as required by subsection 79-5(e)(1) and the Administrative Motion to File Under Seal is denied, the Submitting Party may file the document in the public record no earlier than 4 days, and no later than 10 days, after the motion is denied. A Judge may delay the public docketing of the document upon a showing of good cause.

16

The Court finds that delaying the public docketing is warranted because the material sought to be sealed is the same material at issue in Prof. Kenoyer's underlying motion to maintain confidential designation, and Prof. Kenoyer has shown good cause for why those documents should retain their confidential designation. Prof. Kenoyer shall submit an administrative motion to seal within 10 days of this Order that fully complies with Civil Local Rule 79-5(d) and identifies all documents, or portions thereof, that he seeks to have filed under seal—including portions of Plaintiffs' filings and portions of this Order, if any. Accordingly, Docket Nos. 145, 147, 153, and 156 are held in abeyance.

This Order disposes of Docket Nos. 141, 151, and 152.

**IT IS SO ORDERED.**

Dated: August 16, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge