UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA PARENTS FOR the EQUALIZATION OF EDUCATION MATERIALS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Tom TORLAKSON, et al., <br><br> Defendants. | Case No. 17-00635 CRB (JSC) <br><br> **ORDER RE: PLAINTIFF'S MOTION TO COMPEL** <br><br> Re: Dkt. No. 198 |

Plaintiffs challenge the framework of the California public school curriculum for sixth grade students addressing Hinduism ("the Framework"). Following the district court's rulings on Defendants' motion to dismiss (Dkt. No. 119), and Plaintiff's motion for leave to amend (Dkt. No. 204), the sole claim remaining is Plaintiff's Establishment Clause claim on the second prong of the *Lemon* test. Now pending before the Court is a discovery dispute joint letter brief regarding Plaintiffs' request for certain electronic discovery. (Dkt. No. 198.) In particular, Plaintiffs seek all of Defendants' records as to the Framework and Hinduism regardless of whether the public would have been aware of the records or their content. After carefully considering the parties' letter brief and attached exhibits, as well as the history of this case, the Court denies Plaintiffs' request. Plaintiffs have failed to show that the voluminous documents they seek tend to prove or disprove the claim remaining in this lawsuit. Further, any slight relevance is outweighed by the burden of production.

**DISCUSSION**

The issue in Plaintiffs' remaining Establishment Clause claim is whether the government action—the Framework addressing the Hindu religion—"has the principal or primary effect of

advancing or inhibiting religion." *California Parents for the Equalization of Educational Materials ("CAPEEM") v. Torlakson*, 267 F. Supp. 3d 1218, 1230 (N.D. Cal. 2017). "Courts must analyze the primary effect from the perspective of an observer who is both informed and reasonable." *Id.* In the elementary school context, such as here, "the primary effect prong of the <u>Lemon</u> test asks whether an 'objective observer in the position of an elementary school student would perceive a message of . . . disapproval [of religion]." *Id.* Because Plaintiffs are challenging the content of the sixth grade curriculum, "the Court analyzes the second <u>Lemon</u> prong from the perspective of a reasonable sixth grader." *Id.*

In connection with this claim, Defendants have produced all documents that were "ever uploaded, published, publicly displayed, or otherwise made available for public observation," including audio and video recordings of the relevant public meetings. (Dkt. No. 198-9 at ¶ 3.) Defendants contend that this is all an objective observer could have perceived and thus no more is relevant, or at least reasonable to produce. Plaintiffs insist that Defendants must produce more. Rather than identify particular documents that they believe are relevant, however, Plaintiffs appear to contend that all documents responsive to their 14 document requests (Dkt. No. 198-1) should be produced, regardless of whether an objective observer could have been aware of the documents. The Court denies Plaintiffs' demand.

The requested documents are not relevant to the claim at issue in this case. *See* Fed. R. Civ. P. 26(b)(1). For example, Request No. 4 seeks:

> All electronically stored information relating to the Framework that includes one or more of the following terms: Hindu, Hinduism, Christ, Christian, Christianity, Jesus, New Testament, Jew, Jews, Jewish, Judaism, Moses, Exodus, King David, timeline, time line, Islam, Muslim, Muslims, Muhammad, Islamic, Sikh, Sikhs, Sikhism, Religion, Religions, Religious, Aryan, caste, AIT, AMT, Witzel, Kenoyer, Indo-European, Indo-Eurasian, Steve Farmer, India, Indian, Indians, South Asian, South Asians, and SAFG.

(Dkt. No. 198-1 at 4.) Plaintiffs offer no explanation as to how this wide swath of electronic discovery tends to prove or disprove how an objective observer would perceive the Framework's discussion of Hinduism if it was never publicly available. Instead, they broadly insist that it is relevant to the "history and context" of the challenged government action and therefore discoverable. (Dkt. No. 198 at 2 n.4) (citing *McCreary County v. ACLU*, 545 U.S. 844, 862

(2005); *Trunk v. City of San Diego*, 629 F.3d 1099, 1118 (9th Cir. 2011)). The "specific sequence of events" referred to in *McCreary*, however, were "the traditional *external* signs that show up in the text, legislative history, and implementation of the statute, or comparable official act." *McCreary*, 545 U.S. at 862 (emphasis added) (internal quotation marks and citation omitted). Plaintiffs have the "external" signs; they seek internal information. Nothing in *McCreary* supports their request. To the contrary, *McCreary* emphasized that the court's inquiry on an Establishment Clause claim does not involve "psychoanalysis of a drafter's heart of hearts." *Id.* Similarly, in *Trunk*, the "history and setting" considered by the Ninth Circuit included the Memorial's long history of religious use and symbolism—all publicly available facts. 629 F.3d at 1118-1120.

Plaintiffs' reliance on *Jewish War Veterans of America Inc. v. Gates*, 506 F. Supp. 2d 30 (D.D.C. Sep. 18, 2007), fails to persuade this Court otherwise. That case was not limited to a *Lemon* test prong two Establishment Clause claim; instead, the "foremost" issue was prong one—legislative purpose. *Id.* at 46. Here, in contrast, the district court has already ruled that the California framework has a secular purpose as a matter of law. *CAPEEM*, 267 F. Supp. 3d at 1228. Thus, discovery would have necessarily been broader in *Jewish War Veterans.* For example, the *Jewish War Veterans* court addressed whether particular emails were relevant to the excessive entanglement prong of the *Lemon* test. 506 F. Supp. 2d at 49. The district court here has ruled that there was no excessive entanglement. *CAPEEM*, 267 F. Supp. 3d at 1229-30.

To justify their broad document requests, Plaintiffs have identified a few issues in the "history and context" of the Framework's adoption. First, they contend Defendants told the public that they would select experts through the contracting process conducted by the California Department of Education, but instead chose to solicit handpicked professors who would supposedly provide reports as public comment. From that history and context, Plaintiffs contend that "[a] reasonable observer would question – ***and Plaintiffs are entitled to know*** – whether the process of choosing and consulting with experts behind the scenes was designed to manipulate the content of the Framework in a way that would deride Hinduism and not be subject to public scrutiny." (Dkt. No. 198 at 3 (emphasis added).) Plaintiffs never explain and do not cite any authority as to why they "are entitled to know." Further, regardless of whether the process was subjectively designed to manipulate the Framework's content, the impression on the objective

3

observer would be the same.

Second, Plaintiffs complain that Defendants solicited input from the South Asian Faculty Group in violation of Defendants' own deadlines and the regulations governing public comment. (*Id.*) Plaintiffs may make this argument to the district court, but again they still do not explain how reviewing documents addressing the solicitation of the Group would tend to prove or disprove the Framework's effect on an objective observer who had no access or knowledge of the content of those documents. The same is true as to Plaintiffs' emphasis that two members of the South Asian Faculty Group were also associated with the California History-Social Science Project, the Framework's primary author. Plaintiffs' inquiry is not relevant.

The Court is not ruling that records that were not publicly available are never discoverable in connection with a *Lemon* test prong two Establishment Clause claim. It is instead ruling that Plaintiffs have not identified any such records that are relevant and should be discoverable. This conclusion is further supported by the burden Plaintiffs' request places on Defendants. (Dkt. No. 198-9.) It is not reasonable, nor proportional to the needs of this narrowed case, to require Defendants to produce the requested documents in the hope that something useful may come up. Defendants are thus similarly not required to produce privilege logs for these documents.

This Order disposes of Docket No. 198.

**Dated:** November 13, 2018

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge